# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

      Plaintiff,

  vs.                                           Case No. 1:18-cr-1960 WJ-1

GUILLERMO MARTINEZ-TORRES, and
JESUS GOMEZ-ARZATE,

      Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT MARTINEZ-TORRES' MOTION FOR INFORMATION PURSUANT TO *GIGLIO V. UNITED STATES*

THIS MATTER comes before the Court on Defendant Guillermo Martinez-Torres's Motion for Information Pursuant to *Giglio v. United States*, filed August 17, 2018 **(Doc. 27)**, joined by his co-Defendant Jesus Gomez-Arzate **(Doc. 28)**. Having considered the parties' arguments and applicable law, the Court finds that Defendant's motion is not well-taken in part and, therefore, is **GRANTED IN PART AND DENIED IN PART.**

## BACKGROUND

On June 13, 2018, Defendant Martinez-Torre and Defendant Jesus Gomez-Arzate were indicted with two counts:

> unlawfully, knowingly, and intentionally combined, conspired, confederated, agreed and acted interdependently with each other, and with other persons known and unknown to the Grand Jury, to commit an offense defined in 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), specifically, to distribute 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 USC § 846.

> [and]

> Unlawfully, knowingly and intentionally possess[ing] with intent to distribute a controlled substance, 500 grams and more of a mixture and substance containing a detectable amount of methamphetamine. In violation of 21 USC §§ 841(a)(1) and (b)(1)(A), and 18 USC § 2.

**Doc. 15.** Defendants were apparently stopped for alleged careless driving. During the stop, Bernalillo County Sheriff's Deputies Mora and Mauricio allegedly found methamphetamine in the car.

In the Motion, Defendant seeks the following information in the deputies' personnel files: "citizen complaints; disciplinary actions; internal affairs reports; performance evaluations; all other material written or otherwise revealing specific acts of dishonesty or misconduct bearing on these officers' character for truthfulness as well as their propensity for engaging in unlawful activity going beyond the scope of their official duties." **Doc. 27, p. 3.**

Defendant seeks production of this evidence prior to any hearing on a motion to suppress. Defendant Jesus Gomez-Arzate joined this *Giglio* motion. Defendant argues that the *Giglio* evidence should be produced prior to the suppression hearing, since the credibility of the deputies will be essential to ruling on the motion to suppress.

## DISCUSSION

Defendant seeks an order compelling the Government to search for and disclose *Giglio* and impeachment material of two Bernalillo County Sheriff's Deputies, Deputy Joshua Mora and Deputy Daniel Mauricio, prior to a hearing on Defendant's Motion to Suppress. The Government asserts that such material (1) is not material; (2) is overbroad; and (3) will otherwise be disclosed or searched for, if it exists.

**I.** *Brady and Giglio* **Legal Standard.**

"[T]he *Brady* rule, Rule 16 and the Jencks Act, exhaust the universe of discovery to which the defendant is entitled." *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988); *see also*

*United States v. Griebel*, 312 F. App'x 93, 95–96 (10th Cir. 2008) (noting the "[G]overnment's discovery obligations [] are defined by Rule 16, Brady, Giglio and the Jencks Act" and stating the defendant's request to expand his discovery rights beyond those three sources was unsupported by the law).

    A.    ***Brady***.

The *Brady* doctrine was established by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 87 (1963):

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

The United States Supreme Court in *Kyles v. Whitley*, 514 U.S. 419 (1995), described the responsibility of the government in dealing with *Brady*:

> But the prosecution, which alone can know what is undisclosed, must be assigned the responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable provability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecution succeeds or fails in meeting this obligation, the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of important is inescapable.

*Id.* at 437–38. As relevant here, *Brady* also extends to evidence affecting witness credibility and impeachment evidence. *See Giglio v. United States*, 405 U.S. 150, 154 (1972).

The government is not required to produce evidence simply because it *might* be exculpatory. *United States v. Agurs*, 427 U.S. 97, 110, n. 16 (1976) ("It is not to say that the State has an obligation to communicate preliminary, challenged, or speculative information."); *United States v. Fleming*, F.3d 1325, 1331 (10th Cir. 1994) (noting "[t]he mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard.").

3

Moreover, the Court does not have a duty to directly supervise the government's disclosure of *Brady* information, as such supervision would necessitate a complete review of all material gathered during the government's investigation. *See United States v. McVeigh*, 923 F. Supp. 1310, 1313 (D. Colo. 1996). Rather, the duty to determine what disclosure is required under *Brady* rests with the prosecution. *See Bank v. Reynolds*, 54 F.3d 1508, 1517 (10th Cir. 1995); *McVeigh*, 923 F.Supp. at 1313. The Court should rely on the government's representations of its compliance with *Brady* unless the defendant shows cause to question them and the materiality of the evidence sought. *See McVeigh*, 923 F.Supp. at 1314; *see also Banks v. Dretke*, 540 U.S. 668, 696 (2004) ("[o]rdinarily, we presume that public officials have properly discharged their official duties."). *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (where a defendant only makes a general request for exculpatory material under *Brady*, the government decides which information must be disclosed.).

The Court's materiality review does not include speculation. The mere possibility that evidence is exculpatory does not satisfy the constitutional materiality standard. *Banks v. Reynolds*, 54 F.3d 1508, 1519 (10th Cir. 1995) (internal quotation marks and citation omitted)

**B.** *Giglio*.

"Impeachment evidence is exculpatory for *Brady* purposes." *Cooper*, 654 F.3d at 1119; *United States v. Torres*, 569 F.3d 1277, 1282 (10th Cir. 2009). "Because of the value of cross-examination, when the credibility of a prosecution witness is important, impeaching evidence is subject to *Brady* disclosure." *Nuckols v. Gibson*, 233 F.3d 1261, 1267 (10th Cir. 2000); *see Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ("When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule.") (quotation marks omitted).

4

Moreover, "[s]uppressed evidence that significantly enhanc[es] the quality of the impeachment evidence usually will satisfy the materiality standard." *Cooper*, 654 F.3d at 1120, *quoting Douglas,* 560 F.3d at 1174. Thus, for impeachment evidence to be material, the credibility of a central witness must at issue. *United States v. Espinoza*, 545 F. App'x 783, 786 (10th Cir. 2013); *See also Robinson,* 583 F.3d at 1271 ("[H]is testimony was central—indeed essential—to the government's case.... It is not a stretch to say that the guilty verdict in this case depended upon the [confidential informant's] testimony."); *Douglas,* 560 F.3d at 1175 ("[The witness] was an indispensable witness for the State's case against [the defendant].... Because impeachment of the witness who held the key to the successful prosecution of [the defendant] was denied to the defense, the district court correctly concluded that the State's *Brady* violations were material."); *Nuckols,* 233 F.3d at 1266 ("[The witness's] trial testimony was key to a successful prosecution.... If [the witness's] testimony that Mr. Nuckols initiated the interrogation were impeached, the entire support for the State's case would have been significantly undermined, if not destroyed altogether.").

**II.** **Case Agent Personnel Files**.

Defendant appears to seek the wholesale production of documents in the deputies' personnel files.

**A.** **General Law on Production of Agent Personnel Files**.

Generally, there is no *Brady* right for a defendant to comb through even a testifying case agent's personnel files, or to demand production of categories of documents therein. *United States v. Muse*, 708 F.2d 513, 517 (10th Cir. 1983); *United States v. Garrison*, 147 F. Supp. 3d 1173, 1185 (D. Colo. 2015) ("[Defendant] has no constitutional right to law enforcement witnesses' personnel files simply to see whether they contain potentially impeaching information. If the

Government *knows* of such information, then *Giglio* of course requires its disclosure. But neither *Giglio* nor any other authority gives a defendant a right of access to all categories of information where impeaching material might exist.").

Rather, the Government determines whether documents fall under *Brady* or *Giglio*, absent a showing that the Government has otherwise been hiding such discovery. *See generally Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987), *cited in United States v. Grobstein*, No. CR 13-663 MV, 2013 WL 12328891, at *3 (D.N.M. Sept. 3, 2013).

### B. Procedure for Searching Agent Personnel Files.

In some circumstances, *Brady* requires the government to examine the personnel files of case agents for any *Brady* or *Giglio* material. *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); *See United States v. Hykes*, No. CR 15-4299 JB, 2016 WL 1730125, at *20 (D.N.M. Apr. 11, 2016), *cited in United States v. DeLeon*, No. CR 15-4268 JB, 2017 WL 2271427, at *38 (D.N.M. Mar. 8, 2017); *see also United States v. Grobstein*, No. CR 13-663 MV, 2013 WL 12328891, at *4 (D.N.M. Sept. 3, 2013) (although no finding of materiality, district court ordered "the government to review, … all of [agent's] personnel files…that may contain material exculpatory information casting doubt on the credibility of [agent], either as a general matter or with special reference to this case."); *see also United States v. Goble*, 1995 WL 646822, at *2 (D. Kan. Oct. 11, 1995) ("A duty to search files maintained by governmental agencies closely aligned with the prosecution may be triggered when there is some reasonable prospect or notice of finding exculpatory evidence."), *citing United States v. Brooks,* 966 F.2d 1500, 1503 (D.C. Cir. 1992).

### III. Analysis.

Here, Defendant has made a mere general request for discovery and failed to make any showing of materiality, i.e., that there is a reasonable probability that the requested discovery could

6

lead to admissible evidence. Defendant's request appears to be a mere fishing expedition. Moreover, Defendant's request is overbroad. Defendant is not entitled to the production of nearly every document in a case agent's personnel file as a matter of course. Therefore, the Court concludes that Defendant has failed to make a sufficient showing to order production of these broad categories of documents, to Defendant directly or in an *in camera* hearing. *See Pennsylvania v. Ritchie,* 480 U.S. 39, 58 n. 15 (1987).

Moreover, Defendant requests production of this *Giglio* material prior to the suppression hearing. There is apparently no Tenth Circuit case providing that *Giglio* material must be produced prior to a suppression hearing. *See United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 n.2 (10th Cir. 2013) ("Whether *Brady's* disclosure requirements even apply at the motion to suppress stage is an open question. As the D.C. Circuit has noted, [s]uppression hearings do not determine a defendant's guilt or punishment, yet *Brady* rests on the idea that due process is violated when the withheld evidence is material either to guilt or to punishment.") (internal citation and quotation marks omitted); *United States v. Hykes*, No. CR 15-4299 JB, 2016 WL 1730125, at *19 (D.N.M. Apr. 11, 2016) (determining that *Giglio* does not require production of impeachment evidence prior to suppression hearing, but requiring Government to search Agent's personnel files prior to trial); *United States v. DeLeon*, No. CR 15-4268 JB, 2017 WL 2271427, at *30 (D.N.M. Mar. 8, 2017) (*Brady* does not apply to suppression hearings, because "suppression hearings do not determine a defendant's guilt or punishment").

Defendant points to a Section 1983 case filed in this District against Deputy Mora, *Shawntay Ortiz v. Joshua Mora et. al.,* 1:18 cv-713 JCH-KRS, in which the complaint alleges that Deputy Mora used excessive force in the shooting of two persons. But allegations of excessive force do not tend to bear on his credibility, truthfulness, or generally constitute *Giglio* material.

*See United States v. Harmon,* 871 F. Supp. 2d 1125, 1158 (D.N.M. 2012), *aff'd*, 742 F.3d 451 (10th Cir. 2014) ("For instance, the use of excessive force would not likely bear on an officer's character for truthfulness, because "[v]iolent crimes ... are irrelevant to a witness's character for truthfulness."), *quoting United States v. Parker,* 133 F.3d 322, 327 (5th Cir. 1998).

## IV.    Government's Duty to Investigate.

Nevertheless, the Government bears the duty to comply with *Brady*, which may include the duty to investigate and search case and personnel files. *Strickler v. Greene*, 527 U.S. 263, 280–81, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999) ("Moreover, the [*Brady]* rule encompasses evidence known only to police investigators and not to the prosecutor. In order to comply with *Brady,* therefore, the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police."), *citing Kyles,* 514 U.S., at 437, 115 S.Ct. 1555; *see also United States v. Velarde*, 485 F.3d 553, 558–59 (10th Cir. 2007) ("Accordingly, a defendant may base a *Brady* claim on a government investigator's failure to disclose evidence material to guilt or punishment, even when the prosecutor personally did not know of that evidence."), *citing Kyles v. Whitley,* 514 U.S. 419, 437–38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).  A prosecutor may have a duty to search files maintained by other governmental agencies closely aligned with the prosecution when there is some reasonable prospect or notice of finding exculpatory evidence." *United States v. Rivas*, 26 F. Supp. 3d 1082, 1111–12 (D.N.M. 2014).

Here, the Assistant U.S. Attorneys assigned to this case have agreed to search the relevant personnel files, and it appears that Bernalillo County Sheriff's Office has agreed to let them do so. *See, e.g, United States v. Hykes*, No. CR 15-4299 JB, 2016 WL 1730125, at *20 (D.N.M. Apr. 11, 2016) (Browning, J.) (directing Government to search agency files for *Brady* or *Giglio* material).

8

Based on these representations, Defendant's Motion is **GRANTED IN PART**, in that the Assistant United States Attorneys assigned to this case are directed to search the relevant personnel files and produce any *Giglio* information prior to trial.[1] If the Government does find any *Giglio* information, they should disclose such information as soon as possible, so that Defendant may make effective use of it prior to trial. *See United States v. Burke*, 571 F.3d 1048, 1054 (10th Cir. 2009) ("the belated disclosure of impeachment or exculpatory information favorable to the accused violates due process when an earlier disclosure would have created a reasonable doubt of guilt."). Moreover, to the extent there is any internal investigation ongoing, the Government should inform the Defendant about its existence and any relevant findings that may constitute *Giglio* material.

## CONCLUSION

Defendant's broad discovery requests are **DENIED,** in part for failure to show that any of the requested documents are material**.** However, the motion is **GRANTED IN PART** in that the AUSAs assigned to this case are directed to search the relevant files for any *Giglio* material.

**IT IS SO ORDERED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE

---

[1] Although there is some concern about whether the AUSAs assigned to the case can search the files of a state agency, since BCSO has agreed to let them do so and neither party has address this issue, the Court declines to address it.